IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

| | | |
|---|---|---|
| ALLISON HOOD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 115-159 |
| | ) | |
| BURKE COUNTY SCHOOL DISTRICT, d/b/a BURKE COUNTY PUBLIC SCHOOLS, | ) ) ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

_____

**O R D E R**
_____

The Court **DENIES** Plaintiff's motion to quash third-party subpoenas and **GRANTS** Plaintiff's motion for a protective order (doc. no. 26) in this suit under Title VII, 42 U.S.C § 2000e *et seq.*, and the Family and Medical Leave Act, 42 U.S.C. § 12631 *et seq.* ("FMLA").

### I. AMENDED COMPLAINT ALLEGATIONS

Plaintiff, a teacher formerly employed by Defendant Burke County School District, alleges in Claim I a sexually discriminatory and hostile work environment caused by daily, unwanted sexual advances from James Epps, an assistant principal and Plaintiff's supervisor, from December 2012 through May 2013. (Am. Compl., Doc. no. 17, ¶¶ 64-82.) The advances allegedly included Mr. Epps making lewd sexual comments to Plaintiff, hugging and kissing Plaintiff, demanding nude pictures of Plaintiff, and attempting to show Plaintiff

nude pictures of himself. (Id. ¶¶ 16-47, 70.) Plaintiff claims she suffered lost wages and benefits, diminished employment opportunities, and emotional distress. (Id. ¶ 77.)

Regarding the Title VII retaliation cause of action in Claim II, unidentified colleagues allegedly retaliated against Plaintiff for lodging formal complaints about Mr. Epps by being rude to her, and Principal Sam Adkins retaliated by being reluctant to write a letter of recommendation to assist Plaintiff in her search for another job. (Id. at ¶¶ 78-82.) Plaintiff claims she suffered lost wages and benefits, diminished employment opportunities, and emotional distress. (Id. ¶ 82.)

In Claims III and IV, Plaintiff asserts causes of action under the FMLA for interference with her right to take medical leave and retaliation for taking leave. (Id. at ¶¶ 83-96.) Plaintiff alleges an unspecified "FMLA-covered serious health condition" necessitated her taking leave in January 2013, and additional absences on unspecified dates. (Id. at ¶¶ 35, 42.) The health condition allegedly necessitated "continuing treatment from an [unidentified] healthcare provider," including surgery. (Id. ¶¶ 36-39.) The sexual harassment by Mr. Epps "exacerbated Plaintiff's serious health condition, and necessitated additional treatment for Plaintiff's serious health condition." (Id. ¶ 49.)

In retaliation for her taking leave, Principal Adkins allegedly gave Plaintiff lower evaluation scores, assigned her classes to other teachers, made Plaintiff perform work normally assigned to her subordinates, and never reinstated Plaintiff to a teaching position. (Id. at ¶¶ 56-58.) Plaintiff alleges she suffered lost wages, lost benefits, and "other damages." (Id. ¶ 96.)

2

The opening and closing paragraphs of the amended complaint seek, as to all four counts, declaratory and injunctive relief, back pay, front pay, compensatory damages, punitive damages, attorneys' fees, and costs. (Id. ¶ 1, p. 20)

## II. THE CHALLENGED SUBPOENAS

At issue are six subpoenas, two seeking academic and employment records from East Georgia State College, two seeking academic and employment records from Georgia Southern University, one seeking medical records from Pamela Gallup Gaudry, M.D., Provident OB/GYN, and one seeking employment records from Prudential Kennedy Realty. (Doc. nos. 26-1–26-6.) The academic subpoenas to East Georgia and Georgia Southern request "[a]ny and all academic records, transcripts, including but not limited to applications, evaluations, reprimands, commendations, complaints from or about [Plaintiff], certificates, and/or any other records . . . ." (Doc. no. 26-1, p. 4; doc. no. 26-3, p. 4.)

The employment subpoenas to East Georgia State College, Georgia Southern University, and Prudential Kennedy Realty request "[a]ny and all personnel, payroll and administrative records, including but not limited to applications, evaluations, reprimands, commendations, complaints from or about [Plaintiff], certificates, job, or position descriptions, letters of concern or recommendation, time sheets or time records, hourly wage records, payroll records, the personnel file jacket (all sides), correspondence and/or any other employment records which have been compiled, recorded, or received . . . ." (Doc. no. 26-2, p. 4; doc. no. 26-4, p. 4; doc. no. 26-6, p. 4.)

3

The medical subpoena to Dr. Gaudry requests "[a]ny and all medicals [sic] records or statements, regardless of type or description, including, but not limited to films, x-rays, x-ray reports, mylograms, MRIs, physician's reports, nurse's notes, letters, hospital records and test results, any any [sic] other report, record, document, photograph, video or statement concerning or in any way related to the examination, treatment, evaluation, consultation, or diagnosis of [Plaintiff]." (Doc. no. 26-5, p. 4.)

Defendant served all six subpoenas on December 17, 2015 and commanded production on or before January 5, 2016. On December 23, 2015, defense counsel received an email from Toby Morgan, an attorney that has not made an appearance in this case, stating Plaintiff's intention to file a motion to quash if Defendant did not withdraw the subpoenas and attaching a draft of the motion to quash. (Doc. no. 29-2, p. 5; doc. no. 29-6.) The email directed defense counsel to respond within two days, the second day being December 25, 2015, Christmas day. (Id.) Plaintiff ultimately filed the motion at 3:49 p.m. on Christmas day, without any effort to confer with defense counsel by way of telephone or meeting. (Id.)

### III. DISCUSSION

The scope of discovery under Rule 45 is the same as that under Rule 26. Fed. R. Civ. P. 45, advisory committee's note to 1970 amendment; Barrington v. Mortage IT, Inc., CV 07-61304, 2007 WL 4370647, at *3 (S.D. Fla. Dec. 10, 2007). Fed. R. Civ. P. 26(b)(1) provides as follows:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the

> amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

The Federal Rules of Civil Procedure strongly favor full discovery whenever possible. Republic of Ecuador v. Hinchee, 741 F.3d 1185, 1189 (11th Cir. 2013).

Counsel has a duty to conduct a meaningful discussion of discovery disputes before bringing them to the Court for adjudication. Local Rule 26.5; Fed. R. Civ. P. 26(c), 37(a). Plaintiff contends this duty does not apply in the context of Rule 45 subpoenas, but it should and this Court has held that it does. See, e.g. Hernandez v. Hendrix Produce, Inc., No. CV613-053, 2014 WL 953503, at *1 (S.D. Ga. Mar. 10, 2014). A mere e-mail to opposing counsel providing two days to reply, on the eve of Christmas, falls far short. Nevertheless, the Court will not deny the motion on this basis because ordering counsel to confer now and refile the motion if the conference is unsuccessful would be a waste of time, as it is clear from the briefs that both sides have now communicated fully their respective positions and are at loggerheads. In the future, Plaintiff's counsel should pick up the phone and call opposing counsel, or arrange an in-person meeting, before filing discovery motions.

Plaintiff argues that past employment and academic records are explicitly disallowed by Fed. R. Evid. 404 as character evidence because their only potential relevance defensively is to show Plaintiff was a bad student or employee and acted in conformity with this trait as a teacher at Burke County Public Schools. Plaintiff further argues that allowing discovery of such evidence would have a chilling effect on Title VII claims, citing cases where courts

5

barred discovery into a Plaintiff's immigration status due to possible criminal liability. (Id. at 6.) Finally, Plaintiff asserts that even if the subpoenas seek relevant information, they are overly broad in scope. (Id. at 5.) Defendant argues these records are relevant to Plaintiff's credibility and ability to mitigate damages. (Doc. no. 29, p. 13-14.)

Plaintiff's employment and academic records are discoverable because she alleges Defendants caused her to suffer "diminished employment opportunities" and seeks an award of front pay in connection with all four claims. The front pay inquiry is broad and requires a court to assess availability of other employment opportunities, potential salary at another employer, work and life expectancy, projected length of unemployment, and prospects of obtaining other employment. Warren v. Cty. Comm'n of Lawrence Cty., Ala., 826 F. Supp. 2d 1299, 1312 (N.D. Ala. 2011). In order to accurately gauge a person's prospects for future employment, one must know a great deal about that person's job history and academic credentials. Without this information, the front pay analysis is incomplete, and Defendant cannot adequately defend itself against the allegation that discriminatory and retaliatory actions have diminished Plaintiff's employment opportunities. See Brady v. Lauderhill Auto Inv'rs I, LLC, No. 10-60095-CIV, 2010 WL 4135329, at *2 (S.D. Fla. Oct. 19, 2010) (finding records from prior employers relevant to the inquiry of plaintiff's ability to mitigate damages); Montes v. M & M Mgmt. Co., No. 15-80142-CIV, 2015 WL 4040507, at *4 (S.D. Fla. June 30, 2015) (finding records from prior employers relevant in a worker's compensation retaliation suit which requested front pay).

Defendant is also well within its rights to seek all records concerning Plaintiff's care and treatment by Dr. Gaudry because Plaintiff seeks recovery for emotional distress and alleges a serious medical condition qualified her for FMLA leave. See, e.g. Pinkney v. Winn-Dixie Stores, Inc., No. CV214-075, 2015 WL 1000859, at *5 (S.D. Ga. Mar. 6, 2015) (finding medical records were discoverable because Plaintiff placed her medical condition at issue); Hankerson v. Se. Georgia Health Sys., No. CV212-097, 2013 WL 474806, at *5 (S.D. Ga. Feb. 7, 2013) (finding medical records relevant where Plaintiff alleged emotional distress to determine if there was an alternate cause).

## III. CONCLUSION

For the reasons set forth above, the Court **DENIES** Plaintiff's motion to quash, **GRANTS** Plaintiff's motion for a protective order (doc. no. 26), and **ORDERS** the parties to submit a proposed protective order within seven days of the date of this Order. Defense counsel shall coordinate with the subpoenaed parties to determine reasonable production dates, and the Court is receptive to a reasonable request for discovery extension in light of the delay occasioned by this discovery dispute.

SO ORDERED this 3rd day of February, 2016, at Augusta, Georgia.

_____
BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA